UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>FORREST HEMPSTEAD | No. 3:15-CR-117 (VAB) |

**RULING ON MR. HEMPSTEAD'S FIRST MOTION FOR BOND**

In this case, involving an alleged conspiracy to distribute drugs, Defendant, Forrest Hempstead, moves for release on bond pending his trial in March. He argues that he should be released because "he is neither a risk of flight nor a danger to the community," and because his "trial was continued from December 6, 2016 until March 10, 2017 through no fault of his own." Mot. for Release, ECF No. 277, 1. He also submits certain conditions of release to ensure that he appears at trial and does not endanger the community while released. *Id.*

Specifically, he proposes that his father, sister, and wife will sign non-surety bonds of $200,000.00 each to guarantee his return to this Court, and that he will reside with his wife and children, seek and maintain gainful employment, restrict all travel to within the District of Connecticut, avoid contact with all prospective witnesses, and refrain from possessing a firearm. *Id.* at 3. The Government responds that "there is clear and convincing evidence that the defendant poses a danger to the community and should remain detained pending trial" because he was observed trafficking drugs while on supervised release, has an extensive criminal history, and is charged with serious crimes. Opp. Mem., ECF No. 300, at 1. The Court agrees with the Government.

The Bail Reform Act provides a rebuttal presumption in favor of detention, if there is probable cause to believe that the defendant committed an offense for which a maximum term of imprisonment of ten years or more is proscribed by the Controlled Substances Act, 21 U.S.C. §§ 801

1

*et seq.* 18 U.S.C.S. § 3142(e). In those cases, the defendant "bears a limited burden of production–not a burden of persuasion–to rebut that presumption by coming forward with evidence that he does not pose a danger to the community or a risk of flight." *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001). When the defendant has met his burden of production, the "presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court." *Id.* "Even in a presumption case, the government retains the ultimate burden of persua[ding the court] by clear and convincing evidence that the defendant presents a danger to the community." *Mercedes*, 254 F.3d at 436, citing *United States v. Rodriguez*, 950 F.2d 85, 88 (2d Cir. 1991).

To determine whether the presumptions of dangerousness and flight are rebutted, the Court considers the factors that Congress delineated in Section 3142(g) of the Bail Reform Act, including the nature and circumstances of the offense charged, the weight of the evidence against the defendant, the defendant's history and characteristics and the "nature and seriousness of the danger to any person or the community" that would be posed by his or her release. 18 U.S.C. § 3142(g).

As found by the grand jury, there is probable cause to believe that Mr. Hempstead was part of a conspiracy to distribute and possess with intent to distribute one kilogram of a mixture and substance containing a detectable amount of heroin, violation of the Controlled Substance Act punishable by ten years to life. *See* 21 U.S.C. §§ 841(b)(1)(A)(i); *United States v. Contreras*, 776 F.2d 51, 55 (2d Cir. 1985) ("[T]he presence of an indictment returned by a duly constituted grand jury conclusively establishes the existence of probable cause for the purpose of triggering the rebuttable presumptions set forth in § 3142(e)"). Mr. Hempstead therefore is subject to Section 3241(e)'s rebuttable presumption. Accordingly, the Court must assess Mr. Hempstead's evidence that he does not present a danger to the community or a flight risk, as well as the Sec. 3142(g) factors, bearing in mind the Government's ultimate burden of persuasion.

Section 3142(g) first mandates that the Court consider the nature of the offense charged, including whether it was a narcotics offense. Mr. Hempstead has been charged with possession with intent to distribute one kilogram or more of cocaine, a charge that carries a mandatory minimum term of imprisonment of ten years and triggers the Bail Reform Act's rebuttable presumption. The Second Circuit has recognized that the Act "explicitly commands consideration of pretrial detention for numerous categories of defendants, all of whom are protected by the presumption of innocence." *Dillard*, 214 F.3d at 102. However, the court also noted, in the same case, that Congress was particularly concerned with high penalty drug crimes when it crafted the Act. *See id.* at 101. Because Mr. Hempstead is charged with a serious drug violation, Section 3142(g)'s first factor counsels against his release.

The next factor the Court considers is the weight of the Government's evidence against Mr. Hempstead. *See* § 3142(g)(2). The Government has summarized a substantial amount of evidence that it will present against Mr. Hempstead at trial, including the testimony of a Confidential Informant ("CW-1") who allegedly purchased heroin from Mr. Hempstead, and several recordings of phone calls between alleged co-conspirators that reference Mr. Hempstead, using his alleged alias "White Boy." *See* Opp. Mem., 8, 11-12. CW-1 will explain that Mr. Hempstead took over the "management" of the drug conspiracy when co-defendant King was incarcerated, and that Mr. Hempstead was called "White Boy." *Id.* at 6. CW-1 also will explain that Mr. Hempstead traveled to New York at some point before April, 2015 to pick up a kilogram of cocaine that was later seized from a Ford Taurus belonging to Mr. King. *Id.*

The Government also proffered recorded conversations between Mr. Hempstead's co-defendants, some of whom were incarcerated, that corroborate CW-1's story. Opp. Mem., 7. In these recordings, co-defendants also made "repeated references" to needing bond money from "White Boy." *Id.* at 12. The Government plans to introduce evidence that drug distributors often "look to their suppliers for bail funds when caught transporting narcotics on the supplier's behalf."

3

*Id.* At the detention hearing, Mr. Hempstead challenged some of this evidence, suggesting that his co-defendants' references to his ability to acquire bail money signal only that Mr. Hempstead could seek the help of his brother, a bail bondsman, in securing their release.

The Government's case against Mr. Hempstead is not indisputable, but the Government has proffered sufficient evidence that Mr. Hempstead was involved in significant drug trafficking. Courts frequently rely on proffers or summaries of cooperating witness testimony when making determinations about detention. *See United States v. LaFontaine*, 210 F.3d 125, 131-32 (2d Cir. 2000) (finding that the district court did not abuse its discretion by permitting the Government to proceed by way of proffer with evidence); *United States v. Martir*, 782 F.2d 1141, 1147 (2d Cir. 1986) ("In the informal evidentiary framework of a detention hearing, the methods used to scrutinize government proffers for reliability must lie within the discretion of the presiding judicial officer."); *United States v. Horton*, No. S1 16-cr-0212 (LAK), 2016 U.S. Dist. LEXIS 145554, at *22 (S.D.N.Y. Oct. 20, 2016) (denying release when the Government's anticipated testimony was "detailed, and … supported in some important respects (albeit certainly not in every detail) by line sheets from the court-authorized wiretap, Facebook messages and posts, and photographs").

The Second Circuit has cautioned against using weak or inconclusive evidence in detention hearings, but this is not a case where the Government has "simply stated in the most general and conclusory terms what it hoped to prove." *Martir*, 782 F.2d at 1147 (noting that the Government "referred to no independent evidence, such as tapes, documents, or photographs, of the crimes charged," but declining to rule on the issue because the Defendant did not challenge the proffer). In this case, the weight of the evidence against Mr. Hempstead counsels his continued detention.

The Court must also consider Mr. Hempstead's "history and characteristics," including "whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release." *See* § 3142(g)(3)(B). Here, there are factors weighing in Mr. Hempstead's favor. Mr. Hempstead has strong family ties, including two children, several family members and a wife,

the latter of whom have offered to sign non-surety bonds on his behalf.  *See* Mot. for Release, 2.  He also has a wife and small children at home.  *Id.*  He has worked in the past and promises to do so again.  *Id.*

Mr. Hempstead, however, has a significant criminal record.  *Id.*  This record includes a previous federal charge which resulted in a sentence of over five years, including four years of supervised release.  Opp. Mem., 3.  Mr. Hempstead was serving this term of supervised release, which began on March 18, 2014, when he was arrested for this offense.  *Id.*  The Government claims to have confidential witness testimony that will show that Mr. Hempstead was buying drugs in New York while on supervised release, in violation of several conditions of the release.  *Id.*  Mr. Hempstead's "history and characteristics," therefore, weigh both for and against detention.

Finally, the Court must consider the nature and seriousness of the danger to any person or the community that would be posed by the person's release.  The Government suggests that Mr. Hempstead poses a risk of danger because of his prior arrests and convictions, the fact that he was arrested and crossed state lines while under supervision, and because he has previously possessed dangerous weapons.  The Government adds that Mr. Hempstead may resume his participation in the drug trade, if released.  Because Congress understood the risk of drug trafficking as a "danger to the community" under the Bail Reform Act, Mr. Hempstead's behavior implicates the Act's definition of "dangerousness."  *United States v. Leon*, 766 F.2d 77, 81 (2d Cir. 1985) ("it is clear that the harm to society caused by narcotics trafficking is encompassed with Congress' definition of 'danger' [under the Bail Reform Act]"); *United States v. Colombo*, 777 F.2d 96, 99 (2d Cir. 1985) (denying release when "Colombo was the leader of an enterprise that carried out its criminal activities at his direction ... orchestrating a series of violent criminal operations").

The Court must also determine whether the conditions that Mr. Hempstead proposes will assure the safety of the community, despite the substantial risk caused by his potential involvement in drug trafficking while released.  Mr. Hempstead has agreed to seek employment, refrain from

5

using drugs, and remain in the District of Connecticut.  Mot. for Release, 1-2.  His family-members have generously offered to post bond on his behalf.  *Id.*  Most of these conditions will help ensure his appearance at trial, but do not squarely address the danger that he poses to the community.

As the Second Circuit has recognized, a bail package that might "reasonably assure the appearance of [the defendant] at trial will not reasonably assure the safety of the community." *United States v. Rodriguez*, 950 F.2d 85, 89 (2d Cir. 1991) ("The existence of four cosigners and $10,000 cash may assure the appearance of Rodriguez at trial but will not secure the safety of the community"); *Colombo*, 777 F.2d at 100 ("No further protection is afforded by requiring reports by telephone twice weekly to the pretrial services unit and restricting Colombo to Orange County -- these conditions may serve as mere inconveniences, but they do not hinder Colombo's alleged ability to supervise an illegal enterprise.").  In *Mercedes*, the Second Circuit found that "electronic monitoring, home detention and assurances by [the defendant]'s fiancée that he will comply with the requirements of pretrial release" were "insufficient" in the face of evidence that the defendant, who had allegedly participated in a conspiracy to hijack a drug deal, was both a danger to the community and a flight risk.  *United States v. Mercedes*, 254 F.3d 433, 436-37 (2d Cir. 2001).  While Hempstead is not charged with a violent crime, he is accused of leading a drug conspiracy while on supervised release.

Like in *Mercedes*, the conditions that Mr. Hempstead proposes here do not adequately address the risk that he will continue to participate in the drug trade upon release.  Given that Congress specifically identified the narcotics trade as a danger to the community that the Bail Reform Act sought to redress, the Court must take this risk seriously.  *See* S. Rep. No. 225, 98th Cong., 2d Sess. 20, reprinted in 1984 U.S. Code Cong. & Admin. News 3182, 3203 ("It is well known that drug trafficking is carried on to an unusual degree by persons engaged in continuing patterns of criminal activity. Persons charged with major drug felonies … pose a significant risk of pretrial recidivism."); *United States v. Millan*, 4 F.3d 1038, 1047 (2d Cir. 1993) ("The language

6

referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community").

Thus, after considering the factors set forth under 18 U.S.C. § 3142(g) and according due weight to the presumption under 18 U.S.C. § 3142(e), Mr. Hempstead's motion for release [ECF No. 277] is DENIED.

SO ORDERED at Bridgeport, Connecticut this 6th day of January, 2017.

/s/ Victor Bolden_____

VICTOR A. BOLDEN

UNITED STATES DISTRICT JUDGE