UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 3:15-CR-117 (VAB) |
| FORREST HEMPSTEAD | |

**RULING ON MR. HEMPSTEAD'S MOTION IN LIMINE *Re: James Hearing* [ECF No. 155]**

The United States of America ("Government") has charged Forrest Hempstead ("Defendant") with various crimes relating to an alleged conspiracy to distribute drugs. In advance of trial, Mr. Hempstead has filed a number of pre-trial motions, including a motion for a hearing under *United States v. James*, 576 F.2d 1121, 1127-32 (5th Cir. 1978), *modified en banc*, 590 F.2d 575, to determine the admissibility of statements by alleged co-conspirators. Having reviewed the parties' written submissions and heard oral arguments, this motion is DENIED.

**I. Applicable Law**

Mr. Hempstead requests that this Court hold a *James* hearing in advance of trial to determine whether the statements of his alleged co-conspirators are admissible at trial. *See* Motion in Limine, ECF No. 155, 1. The Government responds that the *James* hearing is not "the sanctioned procedure in the Second Circuit." Government Mem., ECF No. 240, 18. The Court agrees with the Government.

Courts in this Circuit do not usually use the *James* hearing in these situations, relying instead on conditional admission of co-conspirator statements. *United States v. Davidson*, No. 92 Cr. 35, 1992 U.S. Dist. LEXIS 19434, 1992 WL 402959, at *12 (N.D.N.Y. Dec. 16, 1992), *aff'd* 33 F.3d 50 (2d Cir. 1994) ("In the Second Circuit, the functional equivalent of a *James* Hearing is provided by a *Geaney* ruling which occurs during trial and relies for its basis on the facts adduced at trial, including evidence received subject to a motion to strike at the close of the Government's case.") In order to

admit an extra-judicial statement by a co-conspirator under Rule 801(d)(2)(E), the court must find by a preponderance of the evidence "(1) that there was a conspiracy, (2) that its members included the declarant and the party against whom the statement is offered, and (3) that the statement was made both (a) during the course of and (b) in furtherance of the conspiracy." *United States v. Diaz*, 176 F.3d 52, 83 (2d Cir. 1999) (quoting *United States v. Tracy*, 12 F.3d 1186, 1196 (2d Cir. 1993)).  In making this determination, some courts follow the approach set out by the Fifth Circuit in *United States v. James*, and hold a pre-trial hearing—a "*James* hearing"—wherein the government must establish these factors before the statements are admitted at trial.  *See James*, 576 F.2d at 1127-32.

The Second Circuit, however, has rejected the *James* hearing approach and, as a result, this approach is rarely used in this Circuit.  *United States v. Rowland*, No. 3:14cr79 (JBA), 2014 U.S. Dist. LEXIS 110408, at *5 (D. Conn. Aug. 11, 2014) (district courts in this circuit "almost universally reject" requests for *James* hearings).  Instead, courts, following *Geaney*, conditionally admit coconspirator statements and then "determine, when all the evidence is in, whether … the prosecution has proved participation in the conspiracy, by the defendant against whom the hearsay is offered, by a fair preponderance of the evidence." *United States v. Geaney*, 417 F.2d 1116, 1120 (2d Cir. 1969).

If the Court finds that the prosecution has not met its burden, it will "instruct the jury to disregard the hearsay" or declare a mistrial if the hearsay is a "large proportion of the proof" against the defendant.  *Geaney*, 417 F.2d at 1120; *see also United States v. Feola*, 651 F. Supp. 1068, 1129-30 (S.D.N.Y. 1987) ("In this Circuit, the functional equivalent of what the Fifth Circuit calls a James hearing and requires before trial is provided by a *Geaney* ruling, which is provided only during trial, and relies for its basis on the facts adduced at trial, including evidence received subject to a motion to strike at the close of the Government's case. … Defendants who want *James* hearings should so conduct their business as to be tried in the Fifth or Eleventh Circuits.").

In his initial memorandum in support of this motion, Mr. Hempstead argued that the Court should depart from the Second Circuit's general approach to co-conspirator statements and hold a *James* hearing because the Second Circuit's approach is inconsistent with the 1997 Committee Notes to the Federal Rule of Evidence 801(d)(2)(E). Def.'s Mem., ECF No. 156, 4. Mr. Hempstead is correct that the Advisory Committee does say that the admissibility of co-conspirator statements is a "preliminary question." *Id.* However, a "preliminary question of evidence is not one that necessarily requires a pretrial hearing; rather it is a question that must be decided before evidence is admitted— be it before or during trial." *Rowland*, 2014 U.S. Dist. LEXIS 110408 at *5. In fact, Rule 104(b) expressly provides that in deciding "preliminary questions," a court "may admit the proposed evidence on the condition that the proof be introduced later." Fed. R. Evid. 104.

## II. Mr. Hempstead's Case

In Mr. Hempstead's second memorandum supporting this request, he concedes that *James* hearings are not "the normal practice in this district," but argues that a *James* hearing is warranted by the "unusual fact pattern that exists in [his] case." Def.'s Supp. Mem., ECF No. 273, 11. He first argues that the statements the Government seeks to introduce "were not made by individuals involved in the conspiracy at the time they were made," because these individuals were incarcerated when they made them. Def.'s Supp. Mem., 6, 11. Further, he argues that the statements were not made in furtherance of a conspiracy, but instead to secure bond. *Id.* at 5 ("The bulk of the calls dealt with the defendants seeking people to post bond so that they could be released from incarceration. … Clearly, trying to obtain the funds or the necessary signatures to be released on bond is not in furtherance of a conspiracy.").

Courts in this Circuit, when evaluating both statements by incarcerated co-conspirators and statements regarding release on bond, have at times held that such statements were made in furtherance of the conspiracy. *United States v. Agueci*, 310 F.2d 817, 839 (2d Cir. 1962) ("[W]hile arrest or incarceration may constitute a withdrawal from a conspiracy, it does not follow that in every

instance it must."). As a result, there is no reason to abandon *Geaney*'s preferred method of determining the admissibility of co-conspirator statements and hold a *James* hearing.

Mr. Hempstead argues that the statements of his co-defendants were not in furtherance of the conspiracy because the co-defendants were incarcerated when they made the statements. The Second Circuit, however, has held that the arrest of a conspirator does not necessarily constitute that conspirator's withdrawal from the conspiracy. *See United States v. Morales*, 185 F.3d 74, 81 (2d Cir. 1999) ("[W]e must examine the facts of each case to determine whether the imprisonment of enterprise members terminates an ongoing … enterprise."); *United States v. Borelli*, 336 F.2d 376, 389 (2d Cir. 1964), *cert. denied sub nom Cinquegrano v. United States*, 379 U.S. 960. (1965) ("[N]either authority nor reason would suggest that imprisonment necessarily shows a withdrawal.").

Rather than presuming that an incarcerated individual's statement was not made in furtherance of the conspiracy, the Court must evaluate the evidence presented by the Government to show the "continued participation" of the defendant after incarceration. *See, e.g. Agueci*, 310 F.2d at 839 (finding that the defendant had not withdrawn from a narcotics conspiracy when "there was positive evidence that [the defendant] had in fact designated [unincarcerated co-defendants] to look after his interest in the conspiracy after his incarceration [and] was to get a share in the profits made on sales by those co-conspirators"); *United States v. Urrego*, 853 F. Supp. 646, 649-50 (E.D.N.Y. 1994) (arrest and incarceration amounted to withdrawal from conspiracy when the only evidence connecting the defendant to the conspiracy after his arrest was a single comment he made to a third party, and "there was no evidence that this comment was related to the ongoing conspiracy"); *United States v. Escobar*, 842 F. Supp. 1519, 1528 (E.D.N.Y. 1994) (involvement in conspiracy terminated with arrest where continued participation in conspiracy was impossible given that the defendant was "closely supervised at every moment, and is extremely limited in his telephone and personal contacts"). *See generally United States v. Cruz*, 797 F.2d 90, 98 (2d Cir. 1986) ("Whether or not the

arrest and incarceration of a conspirator constitutes withdrawal may be determined by the facts of the case.").

Mr. Hempstead also suggests that statements made by his co-conspirators requesting assistance with bond are unrelated to the conspiracy. A co-conspirator's request for bond can, in certain circumstances, relate to the conspiracy. *United States v. Paredes*, 176 F. Supp. 2d 183 (S.D.N.Y. 2001). In *Paredes*, the court evaluated an incarcerated co-conspirator's phone call to his wife as a statement in furtherance of the conspiracy. *Id.* at 190. The co-conspirator requested that his wife call defendant Paredes, who was not incarcerated, for help with bail. *Id.* at 190. The court found that the phone call was made in furtherance of the alleged drug conspiracy and thus admissible against the defendant. *Id.* "Without this directive," the court reasoned, "[the co-defendant's] wife arguably would not have called Paredes for his help, and a drug courier would remain in jail, thus hindering the objectives of the drug conspiracy." *Id.* While Mr. Hempstead argues that his co-defendants' requests for bond money were "not related to illegal activity or in furtherance of a conspiracy," Def.'s Supp. Mem., 10, more evidence is necessary to m show that the statements are inadmissible against Mr. Hempstead. The Court can determine the admissibility of these statements later consistent with *Geaney*.

Courts in this Circuit have recognized that statements from incarcerated co-defendants and statements requesting release from incarceration can, in certain circumstances, further a conspiracy. Given this case law, there is no reason to depart from the practice that the Second Circuit established in *Geaney*.

Finally, in his first memorandum, Mr. Hempstead argues that the Court should determine the admissibility of the co-conspirator statements in a motion in limine. Def.'s Mem., 2. In *United States v. Saneaux*, which Mr. Hempstead cites, the Court determined the admissibility of a co-conspirator's statement by a motion in limine because it had "difficulty … fathoming an interpretation of [co-conspirator]'s statements which could support the government's position that

those statements were made in furtherance of any conspiracy." 365 F. Supp. 2d 493, 498 (S.D.N.Y. 2005). As discussed above, there is a possibility that the statements in question here were related to the conspiracy in which Mr. Hempstead allegedly participated. The Court cannot conclude that it is "unfathomable" that these statements were made in furtherance of the conspiracy. *Id.* In this case, the Court need not consider *Saneaux*'s alternative to the *Geaney* approach.

### III. Conclusion

For this reason and all the others addressed above, Mr. Hempstead's Motion in Limine Re: James Hearing [ECF No. 155] is DENIED.

SO ORDERED at Bridgeport, Connecticut this 30th day of January, 2017.

/s/ Victor Bolden

VICTOR A. BOLDEN

UNITED STATES DISTRICT JUDGE